*Bakal et al. v. U.S. Bank National Association*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of January, two thousand nineteen.

Present:
> AMALYA L. KEARSE,
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> *Circuit Judges*.

———————————————————

ALEXANDER BAKAL, DAVID VISHER, SANDRA VISHER AND ESM FUND I, LP, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,

> *Plaintiffs-Appellants*,

v.                                                                          18-1320

U.S. BANK NATIONAL ASSOCIATION,

> *Defendant-Appellee*.[*]

———————————————————

For Plaintiffs-Appellants:          JUDITH L. SPANIER, Abbey Spanier, LLP, New York, NY; DEBORAH R. GROSS, Kaufman, Coren & Ress, P.C., Philadelphia, PA.

---

[*] The Clerk of Court is respectfully instructed to amend the caption as set forth above.

For Defendant-Appellee:    MICHAEL S. KRAUT (Kurt W. Rademacher, David B. Salmons, Michael E. Kenneally, *on the brief*), MORGAN, LEWIS & BOCKIUS LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Alexander Bakal, David Visher, Sandra Visher and ESM Fund I, LP (together, the "Certificateholders") appeal from the April 2, 2018 decision and order of the district court dismissing their second amended complaint for failure to state a claim against Defendant-Appellee United States Bank National Association ("U.S. Bank"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010). To withstand a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court examines only the well-pleaded factual allegations, if any, "and then determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* at 679. We "may affirm a district court's dismissal of a complaint on any basis supported by the record." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010).

This is another of the "seemingly-endless stream of derivative actions brought by plaintiffs who lost money that had been invested in residential mortgage-back securities ('RMBS') when the housing market collapsed." *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 2015 WL

2

5710645, at *1 (S.D.N.Y. Sept. 29, 2015). This Court assumes familiarity with RMBS in general, the RMBS securitization process, and the roles of the various entities (such as trust administrator, custodian, certificateholder, master servicer, and trustee) in an RMBS trust.

The Certificateholders are holders of the MASTR Adjustable Rate Mortgage Trust 2006-OA2 (the "Trust") Super Senior Certificates. The Trust was formed on October 1, 2006, and holds 5,660 first-lien, adjustable-rate mortgage loans. U.S. Bank served as the Trustee. According to the Certificateholders' second amended complaint (the "complaint"), in or around May 2008, an increasing number of borrowers defaulted on payments owed for the mortgage loans held by the Trust, and by November 2009 the Trust had already lost more than $100 million.

## I. Breach of Contract Claims

### a. U.S. Bank's Alleged Failure to Enforce the Obligations of the PSA Against Wells Fargo, the "Master Servicer"

Under New York law, to make out a viable claim for breach of contract, the Certificateholders must allege "the existence of a contract, the plaintiff[s'] performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *El-Nahal v. FA Mgmt., Inc.*, 5 N.Y.S.3d 201, 202 (2d Dep't 2015). The Pooling and Services Agreement ("PSA") governing the Trust provides that if the Trustee (U.S. Bank) has actual knowledge of an event of default, defined in the PSA as a Master Servicer Event of Termination ("MSET"), the Trustee is obligated to "exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs." Joint App'x ("J.A.") 268. In other words, if the Trustee learns of an MSET, the Trustee's duties "come more closely to resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture." *Beck v. Manufacturers Hanover Trust Co.*, 632

3

N.Y.S.2d 520, 527 (1st Dep't 2011). The Certificateholders allege that U.S. Bank breached the PSA by, *inter alia*, failing to take action against Wells Fargo (as the "Master Servicer") following an MSET.

We agree with the district court's conclusion that the Certificateholders have failed to plead facts that plausibly support an allegation that an MSET, in fact, occurred, let alone that U.S. Bank breached any contractual duties in failing to respond to one. The complaint alleges that an MSET occurred in August 2010 when Wells Fargo failed to deposit in the Distribution Account around $7.2 million dollars and similarly failed to deposit substantial amounts on a monthly basis thereafter. However, the event to which the Certificateholders refer is Wells Fargo's *crediting* of the amount of $7.2 million to Assured (the Trust's Insurer) instead of *distributing* those funds to Plaintiffs-Appellants (and other Senior Certificateholders). As the court below concluded, this allegation confuses Wells Fargo's role as Trust Administrator (which implicates its duties to *distribute* trust assets) with its role as Master Servicer (which implicates its duties to oversee the servicing of the loans in the Trust). For similar reasons, we reject the Certificateholders' contention that the Master Servicer's directing and permitting the erroneous release of funds by the Trust Administrator in violation of the PSA waterfall payment provisions prior to filing the interpleader action qualifies as an MSET.

Moreover, Wells Fargo's "crediting" and "erroneous" release of funds to Assured occurred after Assured paid out $7.2 million to certain Senior Certificateholders in the wake of the Trust's depreciation in value. While a court in this Circuit ultimately determined that this crediting of the $7.2 million to Assured was an error on the part of Wells Fargo, the court also ordered Assured to *repay* the $7.2 million to the Certificateholders and ordered Wells Fargo to make subsequent distributions according to the court's directives. *Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 785

4

F. Supp. 2d 188, 197 (S.D.N.Y. 2011), *aff'd sum nom. Wells Fargo Bank, N.A. v. Fin. Sec. Assur. Inc.*, 504 F. App'x 38 (2d Cir. 2012). Given the district court's resolution of the erroneous Assured payment, it remains unclear how or why U.S. Bank should have pursued action against Wells Fargo subsequent to that litigation.

Finally, the Certificateholders assert that U.S. Bank failed to respond to an MSET that occurred when Wells Fargo "fail[ed] to observe or perform in any material respect [ ] other material covenants and agreements" of the PSA. J.A. 266. We conclude that the terms of the PSA foreclose this claim. The PSA expressly provides that, if "[t]he Master Servicer fails to observe or perform in any material respect any other material covenants and agreements," such failure ripens into an MSET *only* if "such failure continues unremedied for a period of 60 days after the date on which written notice of such failure . . . shall have been given to the Master Servicer" by *either* the Trustee, the "NIMS Insurer" or the holders of twenty-five percent of the Certificates. *Id.* The complaint does not allege that such notice was given by any of those parties; thus, under the PSA the alleged failures of the Master Servicer did not ripen into an MSET. In sum, as the district court correctly noted, the Certificateholders failed to plead facts that plausibly suggest the occurrence of an MSET; therefore, the court below did not err in dismissing their breach of contract claim with respect to U.S. Bank's obligations under the PSA vis-à-vis Wells Fargo.

### b. U.S. Bank's Alleged Failure to Enforce the Obligations of the PSA Against UBS

The Certificateholders also assert that U.S. Bank breached § 2.03 of the PSA by failing to enforce the obligations of the PSA against UBS Real Estate Securities Inc. ("UBSRESI"), a subsidiary of UBS Americas. Section 2.03 obligates the Trustee to "enforce the obligations of the Transferor [UBSRESI] to correct or cure any . . . breach" of the Transferor's representations and

5

warranties made pursuant to § 2.03. J.A. 227. If UBSRESI fails to cure the breach within 90 days, "the Trustee shall enforce the Transferor's obligations hereunder to (i) purchase such Mortgage Loan at the Purchase Price or (ii) substitute for the related Mortgage Loan an Eligible Substitute Mortgage Loan." *Id.*

As the Certificateholders concede, on September 28, 2012, U.S. Bank—acting in its capacity as Trustee—did commence an action against UBSRESI alleging breach of its contractual obligation to repurchase defective mortgage loans under the PSA governing the Trust. *See U.S. Bank*, *National Ass'n v. UBS Real Estate Securities*, *Inc.* 205 F. Supp. 3d 386, 401-02 (S.D.N.Y. 2016). According to the Certificateholders, however, "[t]he Trustee's lawsuit was filed in late 2012, long after the Trustee was or should have been aware of servicing and underwriting deficiencies. . . ." Br. Pl-Appellants at 42. In other words, the Certificateholders allege that U.S. Bank breached the PSA by failing to act *expeditiously* upon learning that UBSRESI had breached its representations and warranties governing the Trust.

We conclude that the district court properly dismissed this claim. To state a claim for breach of contract, the Certificateholders were required to allege facts showing that the complained-of activity (U.S. Bank's alleged delay in acting) caused them *damages*. *See Gordon v. Dino De Laurentiis Corp.*, 529 N.Y.S.2d 777, 779 (1st Dep't 1988) ("In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint, and the pleadings must set forth facts showing the damage upon which the action is based."). The Certificateholders failed to do so in their complaint, instead alleging in conclusory fashion that damages will be "the subject of expert testimony for proof at trial." J.A. 148. Accordingly, we affirm the district court's dismissal of the breach of contract claim as it regards U.S. Bank's obligations to enforce the PSA against UBSRESI.

6

### c. The Remaining Contract Claims

We also affirm the dismissal of the Certificateholders' remaining contract claims. First, the Certificateholders allege that U.S. Bank breached its obligations regarding the mortgage loan files by failing to "take physical possession of the operative documents for the Mortgage Loans in the Trust" and then review the documents for defects. **A 150.** As the court below highlighted, the PSA does not obligate U.S. Bank to take possession of the operative documents, but merely requires U.S. Bank to relay "to the Transferor and the Certificate Insurer," notice of defects in those documents identified *by the Custodian* (Wells Fargo), J.A. 226, the entity actually responsible for taking possession of the documents, *see* J.A. 223. U.S. Bank thus did not breach its duty to take physical possession of the documents because it never bore that responsibility in the first place.

Finally, the complaint also alleges that U.S. Bank breached the PSA by failing to terminate the Master Servicer upon learning of the Master Servicer's "failures." J.A. 146. This claim is duplicative of the claims concerning the alleged MSETs and was likewise correctly dismissed.

## II.      Common Law Claims

The Certificateholders' failure to plead an event of default also precludes their cause of action alleging breach of fiduciary duty. *AG Capital Funding Partners, L.P. v. State St. Bank & Tr. Co.*, 11 N.Y. 3d 146, 156-57 (2008) (holding that generally, absent an event of default, an indenture trustee does not have a fiduciary duty). Similarly, the district court did not err in dismissing the Certificateholders' common law tort claim. "Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (citing *Clark-Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)). The Certificateholders' second cause of action alleges that U.S. Bank breached its fiduciary duty

of trust owed to the Certificateholders by "failing to demand that UBSRESI and/or the loan [o]riginators cure, substitute, or repurchase Mortgage Loans that breached their [representations and warranties]." J.A. 152. Because this allegation precisely reproduces the allegation that gives rise to the Certificateholders' breach of contract claim, the district court did not err in dismissing the Certificateholders' tort claim.

For similar reasons, we affirm the district court's dismissal of the Certificateholders' cause of action alleging violations of the covenant of good faith and fair dealing. "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). The Certificateholders allege that U.S. Bank breached the covenant of good faith and fair dealing by failing to "take action to protect the Certificateholders' interests" following the alleged MSET and UBSRESI's breaches of its representations and warranties. J.A. 154. Yet again, this claim provides the basis for the Certificateholders' breach of contract claim, and accordingly under New York law it cannot form the basis of a separate cause of action.

### III. The Certificateholders' Failure to Make Pre-Suit Demand

Finally, U.S. Bank contends that this suit should have been dismissed on an alternative ground: the Certificateholders' failure to comply with the PSA's "no-action" clause. The clause stipulates that "[n]o Certificateholder shall have any right . . . to institute any suit" unless any "such Holder" previously shall have made written request to the Trustee or the Trust Administrator to institute such action. J.A. 292. The "no-action" clause thus creates a pre-suit demand requirement. Absent such demand, (which the Certificateholders concede they have failed to make) U.S. Bank argues that Certificateholders' claims as to the Trust must fail.

8

Generally, no-action clauses may not be construed to bar investor claims against an RMBS *trustee* because it would be "absurd to require the debenture holders to ask the Trustee to sue itself." *Cruden v. Bank of New York*, 957 F.2d 961, 968 (2d Cir. 1992). We acknowledge that there is a split among the courts in our Circuit as to whether it would be "equally absurd" to make a demand on the *servicer* to sue the trustee on behalf of the trust for failing to take action against the servicer. *Compare Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 495-96 (S.D.N.Y. 2017) (enforcing a "no-action" clause under those circumstances) *with Bakal v. U.S. Bank Nat'l Ass'n*, 2018 WL 1726053, at \*7 (S.D.N.Y. Apr. 2, 2018) (declining to enforce a no-action clause under those circumstances). However, we need not reach this issue because the Certificateholders have failed to state a claim even assuming their failure to make a pre-suit demand should be excused. Thus, for the purposes of this appeal, we have assumed that the Certificateholders' claims are not barred by the pre-suit demand requirement of the no-action clause, but do not opine on the merits of that issue here.

\*   \*   \*

We have considered the Certificateholders' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9